1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANTWOINE BEALER, | Case No. 1:18-cv-01170-DAD-SAB (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF |
| v. | |
| KERN VALLEY STATE PRISON CLASSIFICATION COMMITTEE, et al., | (ECF No. 29) |
| Defendants. | **THIRTY (30) DAY DEADLINE** |

Plaintiff Antwoine Bealer is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

On May 14, 2018, Plaintiff filed his original complaint. (ECF No. 1.) On February 28, 2019, the Court screened Plaintiff's complaint and found that Plaintiff had failed to state a cognizable claim. (ECF No. 20.) Plaintiff was provided with the legal standards that applied to his claims and granted leave to amend. (Id.)

On April 29, 2019, Plaintiff filed a first amended complaint. (ECF No. 23.) On August 14, 2019, the Court screened Plaintiff's first amended complaint and again found that Plaintiff had failed to state a cognizable claim. (ECF No. 24.) Plaintiff was again provided with the legal standards that applied to his claims and granted leave to amend. (Id.)

Currently before the Court for screening is Plaintiff's second amended complaint, filed on September 30, 2019. (ECF No. 29.)

1

# I.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

# II.

## SUMMARY OF COMPLAINT

The Court accepts Plaintiff's allegations in the second amended complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

2

Plaintiff names the Kern Valley State Prison Classification Committee, Kern Valley State Prison Warden John Doe, CCI D. Patterson, CDW M. Sexton, and CCII M. Oliveira as Defendants.

Plaintiff asserts that Defendant Patterson, K. Welch, Sergeant T. Romo, Defendant Oliveira, and Defendant Sexton were part of the "Classification Committee that made the decision that deprived Plaintiff of his constitutional rights." (ECF No. 29, at 10.) However, Plaintiff also states that he does not know each individuals' involvement in the constitutional violation, i.e., his retention in the SHU; he is only aware that the decision to retain him in the SHU was made by the Classification Committee in Corcoran State Prison on October 8, 2015.

On March 24, 2015, Plaintiff was placed in the Administrative Segregation Unit ("ASU") at Kern Valley State Prison to serve an aggravated term of nine months for threatening a peace officer. Plaintiff asserts that his placement in ASU violated his rights because he did not threaten a peace officer and he was not given a fair opportunity to defendant against the allegations.

After he completed serving his 9-month term in ASU in October 2015, instead of being released back to general population, Plaintiff was transferred to the Security Housing Unit ("SHU") at California State Prison, Corcoran. On October 8, 2015, the Classification Committee elected to retain Plaintiff in the SHU for administrative purposes and only stated vague reasons for the decision to retain Plaintiff. Plaintiff was not provided with a notice that he would be retained in SHU or a written statement of the evidence behind the decision. Plaintiff asserts that, in fact, there was no evidence to support the Classification Committee's decision to assess Plaintiff with an administrative SHU term because, in October 2015, Plaintiff had no previous SHU terms or any substantial disciplinary history. Plaintiff was housed in administrative SHU until July 2016.

Plaintiff asserts that administrative segregation and being housed in the SHU increases an inmate's placement score. Further, a placement score above 60 renders an inmate ineligible for placement at a Level I, II, III, or minimum-security prison and significantly decreases success with the parole board. Additionally, Plaintiff states that the time he was housed in the SHU affected Plaintiff's credits, which, in turn, increased the time that Plaintiff will have to spend in

prison. Plaintiff states that he was not presented with any charges to justify housing him in SHU and the Classification Committee cannot provide any evidence of what Plaintiff has actually done to justify housing him in SHU. Further, Plaintiff contends that there is no law or California state regulation that justifies his placement and retention in SHU. Finally, Plaintiff alleges that he suffered an atypical and significant hardship when he was housed in both ASU and SHU.

Plaintiff alleges that the Classification Committee used an outdated, unconstitutional, bureaucratic method and did not follow the rules and regulations of Title 15 of the California Code of Regulations when the Committee acted to deprive Plaintiff of his liberty. Specifically, the Classification Committee did not take into consideration Plaintiff's behavior, needs, interests, or desires, but only considered Plaintiff's placement score, which has no connection to his behavior or programming in general population. Instead, Plaintiff's placement score comes from situations provoked and instigated by correctional officers, who made conscious decisions to interfere with Plaintiff's programming. Plaintiff asserts that his programming was devoid of any strife or behavioral issues until correctional officers became involved in his programming and he had to defend his rights.

Plaintiff further alleges that there was no emergency or legitimate penological interests involved in the decisions made by correctional staff. Instead, the decisions made by correctional staff had no professional basis and were purely personal.

On November 12, 2015, Plaintiff submitted a 602 administrative appeal concerning placement in the SHU. On December 21, 2015, the 602 was returned to Plaintiff.

On January 13, 2016, Plaintiff resubmitted the 602 because what was written in the response memorandum was not what was discussed by the interviewer, which denied Plaintiff his due process rights. Further, Plaintiff alleged that, since the interview was conducted on approximately December 17, 2015 and he did not receive the administrative appeal back until January 8, 2016, the appeal was returned to Plaintiff almost thirty days overdue.

On January 14, 2016, the 602 was returned to Plaintiff with a response stating that the appeal had been rejected because Plaintiff had changed the issue in the appeal. On January 19, 2016, Plaintiff resubmitted the appeal, stating that he would not "line through" his appeal and that

the issue had not changed.  On January 25, 2016, the appeal was returned to Plaintiff with a response stating that the appeal had been cancelled because Plaintiff failed to follow instructions.

On January 28, 2016, Plaintiff filed a second appeal challenging the cancellation of his first appeal.  The cancellation appeal bypassed the first level of review.  Then, Plaintiff's cancellation appeal was denied at the second level of review with an unintelligible explanation of timely delivery and a statement that Plaintiff failed to follow instructions.  On March 9, 2016, Plaintiff submitted his cancellation appeal to the third level of review, who denied it erroneously.

In relief, Plaintiff prays for nominal, compensatory, and punitive damages.

## III.

## DISCUSSION

### A.      Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff does not adequately link Defendant Kern Valley State Prison Warden John Doe to any deprivation of his constitutional rights.  While Defendant Warden John Doe is named in the list of defendants on page 4 of Plaintiff's second amended complaint, the second amended complaint does not contain any factual allegations asserting what Defendant Warden John Doe did, or did not do, that violated Plaintiff's constitutional rights.  Therefore, Plaintiff has failed to

5

allege any cognizable claim against Defendant Warden John Doe.  Plaintiff was previously advised of the linkage requirement in the Court's prior orders screening Plaintiff's first amended complaint and provided an opportunity to amend.  The Court concludes that further leave to amend would be futile.

**Supervisory Liability**

To the extent that Plaintiff seeks to hold Defendant John Doe Warden liable based solely upon the Warden's supervisory roles, he may not do so.  Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior, or vicarious liability.  Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir.2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them."  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

In this case, Plaintiff's complaint fails to allege facts demonstrating that Defendant John Doe Warden participated in, or directed, any constitutional violations, knew of any constitutional violations and failed to act to prevent them, or implemented a deficient policy that was the moving force of Plaintiff's constitutional violations.  Therefore, the only basis for a claim against Defendant John Doe Warden would be respondeat superior, which is prohibited under § 1983. Plaintiff was previously advised of this deficiency in the Court's prior order screening Plaintiff's first amended complaint and provided an opportunity to amend.  The Court concludes that further leave to amend would be futile.

/ / /

## B.     Eleventh Amendment Immunity

The California Department of Corrections and Rehabilitation cannot be sued for damages in federal court because it is a state agency and, therefore, is entitled to Eleventh Amendment immunity.  Brown v. Cal. Dep't. of Corr., 554 F.3d 747, 752 (9th Cir. 2009) (holding that California Department of Corrections was entitled to Eleventh Amendment immunity with respect to claims brought pursuant to § 1983).  Here, since Defendant Kern Valley State Prison Classification Committee is a part of Kern Valley State Prison, which itself is a part of the California Department of Corrections and Rehabilitation, Defendant Kern Valley State Prison Classification Committee is immune from suit under the Eleventh Amendment.  Herrera v. Pain Mgmt. Comm. Staff at Corcoran State Prison, No. 1:12-cv-01828-MJS (PC), 2012 WL 6005379, at *2 (E.D. Cal. Nov. 30, 2012) (stating that a plaintiff cannot seek relief against CDCR by naming a prison committee as a defendant); see also Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); Garrison v. Nev. Dep't of Corr., No. 3:17-cv-0091-MMD-WGC, 2018 WL 5793158, at * 3 (D. Nev. Nov. 5, 2018).  Consequently, Plaintiff's claims for damages against Defendant Kern Valley State Prison Classification Committee must be dismissed.  Plaintiff was previously advised of this deficiency in the Court's prior order screening Plaintiff's first amended complaint and provided an opportunity to amend.  The Court concludes that further leave to amend would be futile.

## C.     Fourteenth Amendment – Due Process

### 1.     Administrative and/or Disciplinary Segregation

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake."  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  To plead a procedural due process violation, a plaintiff must allege: (1) that the state interfered with a life, liberty, or property interest; and (2) the procedures used to deprive such interest were constitutionally insufficient.  Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1990).  Liberty interests may be found in either the Due Process Clause of the Fourteenth Amendment or in state law.  Chappell v. Mandeville, 706 F.3d 1052, 1062 (9th Cir. 2013).

First, the U.S. Supreme Court has held that "[as] long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Hewitt v. Helms, 459 U.S. 460, 468 (1983), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472, 480-84 (1995). Initially, the law is clear that time spent in administrative segregation and/or disciplinary segregation is the type of condition of confinement ordinarily contemplated by a prisoner's sentence. Sandin, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."); Hewitt, 459 U.S. at 468 ("It is plain that the transfer of an inmate to less amendable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence. … . Accordingly, administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."); Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir. 2000) (stating that "unlike a convicted prisoner, a pretrial detainee may have a liberty interest in not being placed in disciplinary segregation"); May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (finding no liberty interest in avoiding placement in disciplinary segregation before a disciplinary hearing). Further, Plaintiff has failed to allege any facts demonstrating that the conditions or degree of disciplinary confinement to which he was subjected was otherwise violative of the Constitution. Therefore, Plaintiff has not established that the Due Process Clause afforded him a protected liberty interest in avoiding confinement in administrative and/or disciplinary segregation without notice of the cause for confinement or a disciplinary hearing.

Second, "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations[.]" Wilkinson v. Austin, 545 U.S. 209, 222 (2005). State-created liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, … nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. "Rather than invoking a single

8

standard for determining whether a prison hardship is atypical and significant, [courts] rely on a 'condition or combination of conditions or factors [that] requires case by case, fact by fact consideration." Serrano v. Francis, 345 F.3d 1071, 1078 (9th Cir. 2003).

In this case, Plaintiff asserts that his placement and retention in disciplinary and administrative segregation for a total of approximately 16 months imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. However, Plaintiff has failed to allege any facts describing the conditions of his confinement in segregated housing and comparing the conditions imposed upon him to the conditions imposed upon other inmates in general population, protective custody, or segregated housing. See Serrano, 345 F.3d at 1078-79 (stating that the conditions imposed on a plaintiff in the SHU constituted an atypical and significant hardship on the plaintiff because, since the plaintiff was disabled and the SHU was not designed for disabled persons, the plaintiff was forced "to endure a situation far worse than a non-disabled prisoner sent to the SHU would have to face[]"); Bryant v. Cortez, 536 F. Supp. 2d 1160, 1166-67 (C.D. Cal. 2007) (finding an 18-month period of confinement in an administrative segregation unit where there were restrictions on plaintiff's exercise, shower, hygiene, visitation, telephone, work, and education privileges did not create an atypical and significant hardship on the plaintiff).

Further, Plaintiff has failed to allege any facts demonstrating that his placement and retention in ASU and/or SHU "will inevitably affect the duration of his sentence." Sandin, 515 U.S. at 487. While Plaintiff asserts that placement in ASU and/or SHU increases an inmate's placement score and that a placement score above 60 significantly decreases success with the parole board, Plaintiff has failed to allege that he has a placement score above 60. Furthermore, even if Plaintiff has a placement score above 60, a decrease of success with the parole board is not something that "inevitably affect[s] the duration of [an inmate's] sentence." Id.; see also Wilkinson, 545 U.S. at 223-24 (finding "an atypical and significant hardship within the correctional context" where, in addition to several other harsh conditions, placement at the supermax facility disqualifies an otherwise eligible inmate for parole consideration). Additionally, while Plaintiff asserts that his placement in SHU affected his credits and, thus,

increased the time that he will have to spend in prison, this conclusory statement is unsupported by any facts showing how his placement and retention in SHU affected his credits and will "inevitably" increase the time that he will have to spend in prison. <u>Sandin</u>, 515 U.S. at 487.

Therefore, Plaintiff has failed to establish that his placement and retention in disciplinary and/or administrative segregation "present[s] the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." <u>Sandin</u>, 515 U.S. at 486. Accordingly, since Plaintiff has not established that the decision to initially place and then to retain Plaintiff in ASU and/or SHU interfered with any of Plaintiff's protected federal or state-created liberty interests, Plaintiff has not stated a cognizable Fourteenth Amendment due process claim based on his placement and retention in ASU and/or SHU. Plaintiff was previously advised of the legal and pleading standards for due process claims in the Court's prior orders screening Plaintiff's original and first amended complaints and provided an opportunity to amend. The Court concludes that further leave to amend would be futile.

2. <u>Administrative Appeal Process</u>

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005). Here, Plaintiff alleges that his 602 administrative appeal concerning his placement in SHU was improperly cancelled and then his 602 administrative appeal challenging the improper cancellation of his prior appeal was erroneously denied. However, Plaintiff does not have a protected liberty interest in the processing and resolution of his administrative appeals. <u>Ramirez v. Galaza</u>, 334 F.3d 850, 860 (9th Cir. 2003) (citing <u>Mann v. Adams</u>, 855 F.2d 639, 640 (9th Cir. 1988)). Therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals against any Defendant. Plaintiff was previously advised of this deficiency in the Court's prior order screening Plaintiff's first amended complaint and provided an opportunity to amend. The Court concludes that further leave to amend would be futile.

///

///

**D.     Eighth Amendment – Conditions of Confinement**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006). Prison officials therefore have a "duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted). "Although the routine discomfort inherent in the prison setting is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, 'those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation.'" <u>Id.</u>; <u>see also</u> <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992). "The circumstances, nature, and duration of a deprivation of these necessities must be considered in determining whether a constitutional violation has occurred." <u>Id.</u>

"A prisoner claiming an Eighth Amendment violation must show (1) that the deprivation he suffered was 'objectively, sufficiently serious'; and (2) that prison officials were deliberately indifferent to his [health or] safety in allowing the deprivation to take place." <u>Morgan</u>, 465 F.3d at 1045. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if the official knows that the plaintiff faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it. <u>Farmer v. Brennan</u>, 511 U.S. 825, 837-45 (1994).

Here, Plaintiff alleges that Defendants Patterson, Sexton, and Oliveira violated his Eighth Amendment rights when, as members of the Institution Classification Committee, they decided to retain Plaintiff in the SHU on Administrative SHU segregation. While Plaintiff has alleged that he was housed in administrative segregation from October 2015 to July 2016, Plaintiff has failed to allege any facts describing the conditions in administrative segregation. Since Plaintiff has not alleged any facts showing that he was deprived of adequate food, drinking water, sanitation, personal hygiene items, exercise, or any other measure of life's necessities while he was housed in administrative segregation, Plaintiff has not established that he was subjected to conditions sufficiently grave to fall within the purview of the Eighth Amendment. <u>May v. Baldwin</u>, 109 F.3d 557, 565-66 (9th Cir. 1997). Additionally, Plaintiff has not alleged any facts showing that

Defendants Patterson, Sexton and/or Oliveira knew Plaintiff faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate the risk. Therefore, Plaintiff has failed to allege a cognizable Eighth Amendment conditions of confinement claim. Plaintiff was previously advised of the legal and pleading standards applicable to an Eighth Amendment conditions of confinement claim in the Court's prior order screening Plaintiff's first amended complaint and provided with an opportunity to amend. The Court concludes that further leave to amend would be futile.

## IV.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, Plaintiff's second amended complaint fails to state a cognizable claim for relief against any named Defendant. Plaintiff was previously notified of the applicable pleading and legal standards and the deficiencies in his pleading in the Court's February 27, 2019 and August 14, 2019 orders screening Plaintiff's original and first amended complaints. Despite guidance from the Court, Plaintiff's second amended complaint is substantially similar to Plaintiff's original and first amended complaints. Based upon the allegations in Plaintiff's original, first amended, and second amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional facts to support his claims, and that further amendment would be futile. Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."). Hence, further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, IT IS HEREBY RECOMMENDED that this action be dismissed, with prejudice, for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual

12

findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 24, 2019**

_____
UNITED STATES MAGISTRATE JUDGE